## Goss *v.* Emerson.

The payee of a negotiable note, who takes other notes for security of the ma-
ker, and gives him a written undertaking to return them, when his note is
paid, may lawfully transfer these securities to an indorsee of the note,
which they were pledged to secure.

If the indorsee to whom such securities have been so transferred, wrongfully
convert them to his own use, the original payee and pawnee is not liable in
trover, for such conversion by his assignee.

TROVER, for four promissory notes, given by one Hatch to the
plaintiff, on the 8th of April, 1846, for fifty dollars each, and payable
to him, or order, in one, two, three and four years. The writ
was dated September 29th, 1848 ; and was served on the same
day, but not till after the transactions hereinafter set forth.

Plea, the general issue.

It appeared in evidence that on the 29th of March, 1848, the
plaintiff gave to the defendant the following note, or accountable
paper, to wit :

"*Hartford, March 29th,* 1848.

"Received of D. B. Emerson, the sum of two hundred and
three dollars and seventy-eight cents, which I promise to pay
to him or order, in six months from date, with interest. When
the above sum of two hundred and three dollars and seventy-
eight cents is paid, four notes of fifty dollars each, signed by
W. Hatch, running to L. Goss, are to be given up to him.

(Signed,)                LEVI GOSS."

And on the same day the defendant gave to the plaintiff the
following paper :

"*Hartford, March 29th,* 1848.

"Received of Levi Goss, four notes of fifty dollars each,
signed by Wm. Hatch, which I agree to return to him when he
pays a note of two hundred and three dollars and seventy-eight
cents, signed this day, running to me.

(Signed,)          D. B. EMERSON."

It was admitted that the note referred to in the last receipt

was the above paper signed by said Goss. It appeared that when the above papers were signed by the parties, the four notes were put into the hands of the defendant, that they were negotiable, and of the description set forth in the plaintiff's writ, and that the plaintiff did not indorse them, when he passed them to the defendant.

On the next day, March 30th, the defendant went to Hatch with the notes, two or three times, and desired him to promise to pay the same to him. Hatch declined; but said he would pay them to whomsoever the holder might be when they fell due. On the next day, or day after, the defendant passed the note or accountable paper, signed by the plaintiff, to one Kingsbury, who paid him the amount due on the same, and also at the same time delivered to him the four notes, with the understanding between himself and Kingsbury, that he should hold the notes as security for the $203.78, in the same manner as Emerson had. Within three or four days thereafter, Kingsbury went to Hatch and arranged with him to take up the four notes and give four others of the same amount and dates, payable to Kingsbury or bearer. This was done, and Hatch then took up the notes for which this suit was instituted, and canceled the same, and gave four, payable to Kingsbury or bearer. These last notes Kingsbury immediately passed to one Tenney and received the cash therefor. The transactions of Kingsbury with Hatch and Tenney were not known to Emerson till after they were completed,

The plaintiff did not know of the transfer of the notes to Kingsbury, nor of any thing which Emerson, Kingsbury, Tenney or Hatch did till long afterwards, nor did he in any way, at any time, assent to what was done.

On the 29th of September, 1848, the plaintiff obtained in gold and silver, mostly gold, what was paid to him as $210, by the bank at Lebanon. On that day he subsequently demanded of the defendant the four notes, stating at the same time that he had the money with him to pay the note of $203.78 and interest, which was the fact. The note of $203.78, then amounted to $209.90. Before they separated, the plaintiff made to the de-

Goss *v.* Emerson.

fendant a tender of the money received from the bank, which the defendant declined to receive; but he made no objection on account of the quality or kind of money tendered, nor on account of the amount. The money tendered consisted of forty gold sovereigns, two gold half eagles, two gold quarter eagles and three quarters of a dollar in silver. Thirty-four of the sovereigns were such as were taken at the Grafton bank, a few years since, for $4.85 each, and six of them at $4.84 cents each. It appeared also, that sovereigns of this discription occasionally passed for $4.87½. About a week before this tender was made, Kingsbury went to Hatch with the notes which had been made payable to him, and which he had passed to Tenney, and at his request Hatch made a new set of notes, four in number, payable to the plaintiff, in all respects like those for which this suit is instituted, and Kingsbury gave up those which had been made payable to him, and when the plaintiff made the tender as aforesaid, Emerson, who had become possessed of these last named new notes from Kingsbury, offered them to the plaintiff, but he declined to receive them.

Upon the foregoing state of facts the defendant objected to the maintenance of the action for the following reasons:

" 1st. — The action should have been on the contract and not in trover.

" 2d. — There has been no conversion of the notes by the defendant.

" 3d. — There was no demand made upon the defendant for the notes.

" 4th. — There was no sufficient tender by the plaintiff, because it was not sufficient in amount; was not in money or bank bills; was in bullion or its equivalent.

" 5th. — The defendant offered to give up the notes, which the law will regard as the same with those which the defendant received from the plaintiff."

The court overruled the objections, and ordered a verdict for the plaintiff, on which judgment is to be entered, or the verdict is to be set aside and judgment entered for the defendant, according to the opinion of the court upon the whole case.

*Kittridge* for the plaintiff.

*H. A. Bellows* for the defendant.

PERLEY J.   The note given by the plaintiff to the defendant, March 29, 1848, was negotiable.   It was an absolute undertaking to pay $203.78, to the plaintiff or order, in six months with interest.   A contract, by the same writing and on the same consideration, to pay a sum of money and also to deliver goods, is not a negotiable note; because, the contract being entire, and not negotiable as to the goods, it cannot be negotiable as to the money.   The note in the case merely recites the consideration; the undertaking is to pay absolutely in money, and in money alone.

The four notes, for which this suit was brought, were delivered to the plaintiff, in pledge, to secure payment of the plaintiff's note.   By the written agreement of the defendant, the plaintiff was to have these notes back when he paid his note of $203.78. The plaintiff was to pay his note; that is to say, he was to pay $203.78, and interest, to the defendant or his indorsee, according to the tenor of the note.   The plaintiff, by the obvious construction of the contract, was to make payment to the holder of the note, before he could entitle himself to a return of the securities, pledged for its payment.   The defendant did not agree to restore the pledge, when the plaintiff should pay him $203.78 and interest, but when he should pay the note; and payment of the money to the defendant, after the note was indorsed, would not pay the note.   The note could only be paid to the holder.   The tender, therefore, to be available should have been made to the holder; but the tender was made in this case to the defendant, after he had indorsed and transferred the note, and when he had no right to the money due on it.

It is, therefore, unnecessary to consider whether the tender stated in this case would have been sufficient, if it had been made to the proper party.

Foreign gold coins are not however a legal tender; nor are they current at any exact known and fixed rate, like current bank notes, and some foreign silver coins; and it may well be doubted whether the creditor to whom foreign gold is tendered in payment, is bound to make his objection at the time, as in the

Goss v. Emerson.

case of current bank notes. Such foreign gold coin is of uncertain and fluctuating value, and in that respect is more like a commodity than like cash. If offered without any statement of the sum to which it was supposed to amount, the creditor would not have the means of knowing the exact sum which the debtor meant to admit that he owed. When a tender is pleaded, the plaintiff takes judgment for the amount tendered. The defendant could not plead that he tendered certain specified gold coins, and aver that at the time of the tender they were of a certain value. The plaintiff could take no judgment upon such a plea. He must plead that he tendered a sum certain and make profert of the money in court; and if, in the mean time, the foreign coin had fallen in market value, the same coin would not keep his tender good. But it is not necessary to pursue this point further, as in this case there was no tender made to the party who was entitled to receive payment.

The general property in the four notes pledged, remained in the plaintiff; but the defendant took them in pawn for the payment of his debt, and thus gave him an interest in them, which, whether his debt were negotiable or not, he could lawfully transfer to a third person. He might assign all his interest in the pledge; or he might assign it conditionally, to secure payment of his own debt; or he might deliver it to a bailee, without consideration, to hold as a deposit for him. The transfer of the notes in any one of these ways would be a legal disposition of them, authorized by the nature of the defendant's interest as pawnee.

In *Jarvis* v. *Rogers*, 15 Mass. Rep., 408, *Jackson*, J., delivering the opinion of the court, says: "The pawnee may deliver the goods to a stranger without consideration; or he may sell or assign all his interest absolutely; or he may assign it conditionally by way of pawn; without in either case destroying the acquired lien, or giving the owner the right to reclaim them on any better terms than he could have done before such delivery or assignment." *Sir John Ratcliffe* v. *Davis*, Yelverton, 178; *Demainbry* v. *Metcalfe*, 2 Vernon, 690; *Bush* v. *Lyon*, 9 Cowen, 56; *Bullard* v. *Billings*, 2 Vermont, 309, and Story on Bailments, 219, go to establish the same general doctrine.

Where the pledge has been merely bailed to a third person, and the whole interest remains in the original pawnee, payment or tender may be made to him, and after tender to the pawnee, the bailee on demand will be liable in trover. *Ratcliffe* v. *Davis*, Yelverton, 178.

But where the interest is assigned with the thing pledged, tender should be made to the assignee. *Demainbry* v. *Metcalfe*, 2 Vernon, 690.

*Murray* v. *Burling*, cited for the plaintiff from 10 Johnson, 172, does not appear to be in point. In that case the note was entrusted to the defendant to raise money and pay the plaintiff's debt; instead of that, the defendant transferred the note in payment of his own debt, in direct violation of his trust and contrary to his express undertaking.

The legal nature of the defendant's interest in the four notes, gave him the right to transfer them to Kingsbury with the negotiable debt, which they were pledged to secure. Of course he cannot be charged with a wrongful conversion, by assigning the notes to Kingsbury.

If the act of Kingsbury in delivering up the notes to the maker was a conversion, it was not the act of the defendant. He had legally parted with his possession and all his interest. Kingsbury was substituted in his place as the lawful holder of the securities, and the defendant cannot be charged with the wrongful act of another, over which he had no control. A mortgagee might as well be held liable for the destruction of the mortgaged property, after he had parted with all his interest by a valid assignment.

The demand in this case was unnecessary, if there had been a previous conversion, and unavailing, if there had not. If the defendant, at the time of a demand, has in his possession goods of the plaintiff, which he is able and bound to deliver, his refusal, on demand, to deliver, would shew that he then unlawfully detained the goods from the plaintiff; and this unlawful detention would of itself be such a control over them as would be inconsistent with the plaintiff's rights and would amount to a conversion. So if he were bound to have the goods ready

for delivery on demand, and at the time of the demand they were out of his posession and power, so that he could not deliver them, this would be evidence tending to shew that he had previously disposed of them by an illegal conversion to his own use. But if the goods, at the time of the demand, are not in the power of the defendant, he cannot then exercise any control over them that will constitute a conversion. If it appear that he had lost the possession without such tortious interference as would amount to a conversion, the demand and refusal will not make him liable in this form of action. In this case, at the time of the demand, the four notes were not in the control of the defendant, and it was out of his power to deliver them, and he could not be guilty of a conversion at that time. The facts are found, which shew how he parted with the notes, and what has since been done with them. If on those facts he had been previously guilty of conversion, the demand was unnecessary; and if he had not, the demand could not make him so, although he might be liable in another form of action.

If a carrier have lost goods, by accident or negligence, a demand and refusal will not make him liable in trover, though he may be liable in case of assumpsit. *Anon.*, Salkeld, 655.

And so of a wharfinger. *Ross* v. *Johnson*, 5 Burr., 2827.

If the defendant has bound himself personally, by his contract, to see that the notes were returned when the debt for which they were pledged was paid, the plaintiff must seek his remedy by an action on the contract, and not in trover.

The offer of other notes, instead of those which were pledged, of the same tenor, but made at another time, and on a different consideration, could not defeat any right of action that the plaintiff had. If the defendant had no right to transfer the notes to Kingsbury, or if Kingsbury's act had been a conversion, for which the defendant was liable, the subsequent tender of other securities or even the same, would not in law, discharge the plaintiff's right of action. Trover is allowed to be maintained for a promissory note, or other written security, on the ground that it is a specific thing, in which the plaintiff has a property, as in any other chattel. It is the written instrument, and not

the money due on it; the security and not the debt, that is the subject of the action. As in any other case of a conversion, the tender and return of the thing converted would not be shewn to defeat the action, but only in mitigation of damages.

The plaintiff might well decline to receive new securities of the same tenor and made by the same party, but bearing a false date, made in fact at a different time, on a different consideration, or perhaps without any consideration at all, and which might be open to various defences that would not have been set up against the original notes.

The case shews no conversion of the notes by the defendant; and the verdict must be set aside, and judgment entered for the defendant.